1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Mark Crawford,<br><br>                    Defendant. | 1:02-CV-06498 OWW<br>1:96-CR-05127 OWW<br><br>ORDER RE MARK CRAWFORD'S MOTION TO SUPPLEMENT THE RECORD AND TO PRODUCE CJA RECORDS (DOCS. 8-1 & 9, 1:02-CV-06498 OWW) AND THE UNITED STATES' "MOTION TO STRIKE RE: DEFENDANT'S REPLY BRIEF, DEFENDANT'S MOTION TO EXPAND THE RECORD ... AND DEFENDANT'S MOTION TO PRODUCE CJA RECORDS" (DOC 920) |

I.   INTRODUCTION

Before the court for decision are various evidentiary
motions related to Defendant Mark Crawford's ("Crawford" or
"Petitioner") pending motion pursuant to Title 18, United States
Code, section 2255 ("Petition").  Petitioner contends that he did
not receive the effective assistance of counsel during his June
23, 1999 trial, which resulted in a jury convicting him of
racketeering, racketeering conspiracy, murder in the aid of
racketeering, kidnaping in the aid of racketeering, conspiracy,
embezzlement from an employee welfare benefit plan, six counts of

1

wire fraud, three counts of money laundering, obstruction of
justice by killing a witness, obstruction of justice by
retaliation against a witness (murder), threatening to commit a
crime of violence against a witness, and three counts of perjury.

Crawford's central contentions are that his lead trial
counsel, Bill May, (1) was unprepared for trial and was impaired
by physical, emotional, financial and legal problems during
trial; (2) failed to call a key defense witness, Mr. Noel, who
Mr. May indicated in his opening statement would testify; and
(3) had an actual conflict of interest that adversely affected
his representation of Mr. Crawford.  Crawford maintains that he
received a constitutionally inadequate defense warranting a new
trial.

The following preliminary, evidentiary matters have been
submitted for decision:  (1) Mark Crawford's motion to Produce
CJA Records, Doc. 8-1, 1:02-cv-06498; and (2) Mark Crawford's
motion to expand the record with materials submitted as exhibits
to his reply brief, Doc. 9, 1:02-cv-06498.  The government
opposes both motions and has filed a "Motion to Strike Re:
Defendant's Reply Brief, Defendant's Motion to Expand the Record
Pursuant to Rule 7 of the Rules Governing Section 2255 Cases and
Defendant's motion to produce CJA records."  Doc. 920.[1]  The
underlying § 2255 petition will be addressed by separate
memorandum opinion.

---

[1]    Unless otherwise noted, all "Doc." references are to
Docket entries in the criminal case:  1:96-cr-05127.

## II.   DISCUSSION

### A.   Petitioner's Motion to Augment the Record and the Government's Motion to Strike.

Petitioner requests entry of an order allowing the parties to expand the record with the materials submitted as exhibits to his reply brief ("Reply"), which include (1) affidavits and sworn statements from witnesses and experts; (2) testimony from the State murder trials; (3) pleadings and deposition testimony from a lawsuit against Mr. May; (4) pleadings from the bank fraud criminal case against Les Tatum, a corrupt banker who allegedly worked with Petitioner, but who also, independently, defrauded Mr. May; and (5) certified records from the State Bar of Texas regarding Mr. May.

The government opposes this motion in part and moves to strike certain portions of Crawford's Reply, along with certain exhibits thereto, as time-barred.

Pursuant to 28 U.S.C. § 2255(f)(1), "[a] 1-year period of limitation shall apply" to motions brought under § 2255. Petitioner filed a *pro se* Habeas Corpus petition pursuant to 28 U.S.C. § 2255 on December 3, 2002.  No dispute exists as to the timeliness of the original petition.  The United States filed its response to the petition on July 26, 2006.  Doc. 5, 1:02-cv-06498.  Petitioner, this time with the assistance of counsel, filed his Reply on August 28, 2006.  Doc. 7-1, 1:02-cv-06498.

The original petition alleged that Petitioner's lead trial counsel, Bill May, was ineffective in seven respects: (1) May failed to secure the attendance of a key defense witness, William Noel, who purportedly would have testified to a conspiracy to

3

frame Petitioner for the Murder of Nick Brueggen; (2) May failed to adequately prepare for trial, having admitted as much to Petitioner; (3) May suffered "overwhelming personal and financial problems" compromising counsel's duty of loyalty and creating a conflict of interest; (4) May suffered financial, emotional, and psychological problems contributing to his ineffectiveness as trial counsel; (5) May slept through certain portions of the trial proceedings; (6) May failed to offer Petitioner's sons' school attendance records into evidence to corroborate his alibi defense; and (7) May failed to object to the prosecution's closing argument, in which the prosecutor asserted that Petitioner's sons were at school all day on the day of the murder.  Doc. 812.

The Reply included numerous factual claims that were not discussed in the original petition, namely, that: (1) May failed to call other key witness; (2) May failed to call expert witnesses; and (3) arguments pertaining to Mays disciplinary records.  Doc. 7-1, 1:02-cv-06498.  The government now moves to strike the following portions of the Reply and related exhibits:

• Pages 21 through 36 of Crawford's reply brief, which argues that Mr. May failed to call certain key witnesses other than Mr. Noel.

• Declaration of Deborah Cordis-Weaver, insofar as it pertains to the failure to call witnesses other than Mr. Noel.[2]

---

[2] The exhibit numbers referenced by the government in its motion to strike do not correspond to the exhibits as they are numbered in the courtesy copies sent to chambers.  It appears

1    •     Notes re: Michelle Miller, insofar as it pertains to a

2    separate set of operative facts.

3    •     Declaration of Samuel Holland, insofar as it pertains

4    to a separate set of operative facts.

5    •     Declaration of James T. O'Donnell, insofar as it

6    pertains to a separate set of operative facts.

7    •     Declaration John I. Thornton, insofar as it pertains to

8    a separate set of operative facts.

9    •     Declaration of Jaynnie Vasquez, insofar as it pertains

10   to the failure to call witnesses other than Mr. Noel.

11   •     Declaration Kenna R. Cavnar, insofar as it pertains to

12   a separate set of operative facts.

13   •     Motion for Appointment of Experts, because the issue of

14   expert witnesses was not raised in the original petition.

15   •     Court Order re: Appointment of Experts, because the

16   issue of expert witnesses was not raised in the original

17   petition.

18   •     Defendant's Expert Witness List, because the issue of

19   expert witnesses was not raised in the original petition.

20   •     Trial Subpoena for Todd Houston, because this witness'

21   testimony was not raised in the original petition.

22   •     State of Texas trial transcripts, because the testimony

23   of these witnesses was not raised in the original petition.

24   •     State of Texas trial transcripts, because the issue

25

26   that Petitioner's response to the motion to strike has adjusted
     the exhibit references to correspond to the courtesy copies.
27   Wherever possible, this decision has attempted to utilize the
28   numbering scheme utilized in the courtesy copies.

**1**  discussed therein was not raised in the original Petition.

**2**  •   Records Affidavit and attached documents, because the

**3**  issue discussed therein was not raised in the original

**4**  Petition.

**5**  •   Documents pertaining to Mr. May's Disciplinary Record.

**6**

**7**
    **1. <ins>The Reply Must be Construed as a Motion to Amend
the Petition.</ins>**

**8**

**9**
  The United States moves to strike the newly-raised claims as

**10**  improper and untimely amendments to the petition.  Doc. 920.

**11**  Petitioner rejoins that his Reply was not intended to be a formal

**12**  amendment, and, therefore, "there is no statute of limitations

**13**  issue here and no basis to 'strike' anything from the reply

**14**  brief."  Doc. 923 at 3.

**15**
  Petitioner offers no legal support for his contention, which

**16**  runs counter to Habeas Rule 2(c)'s requirement that a Habeas

**17**  petition "specify all the grounds for relief available to the

**18**  petitioner" along with "the facts supporting each ground."  The

**19**  purpose of requiring such specificity is to "assist the district

**20**  court in determining whether the [United States] should be

**21**  ordered to 'show cause why the writ should not be granted.'"

**22**  *Mayle v. Felix*, 545 U.S. 644, 656 (2005).

**23**
    [I]f it plainly appears from the petition ... that the
    petitioner is not entitled to relief in the district

**24**
    court," the court must summarily dismiss the petition
    without ordering a responsive pleading.  If the court

**25**
    orders the [United States] to file an answer, that
    pleading must "address the allegations in the petition.

**26**  *Id*. (citing Habeas Corpus Rule 4 and Rule 5(b)).  Specificity in

**27**  the pleading gives the United States notice so that it may frame

**28**  its response to the petition.

Here, the Reply includes factual claims and assertions not set forth in the original petition, giving the government no notice of the new grounds for relief discussed in the Reply.  The arguments raised for the first time in the Reply are improper unless the original petition is amended to include them.  It is therefore appropriate to interpret Petitioner's filings as a motion to amend.

## 2.   Relation Back of New Allegations.

A habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242.  Rule 15 of the Federal Rules of Civil Procedure permits amendments that "relate[] back to the date of the original pleading."  FRCP 15(c)(1).  A pleading relates back when the asserted amendment arises "out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading."  FRCP 15(c)(1)(B).

In *Mayle*, the United States Supreme Court held that "[a]n amended habeas petition ... does not relate back ... when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." 545 U.S. at 650.  The petitioner in *Mayle* timely asserted that his Sixth Amendment Confrontation Clause rights had been violated.  Subsequently, petitioner sought to amend his petition to allege a violation of his Fifth Amendment right against self-incrimination.  *Id*. at 649.  The Ninth Circuit held that the amended petition related back to the original petition because both claims arose from the same "trial and conviction in state

court." *Id*. at 653 (citing *Felix v. Mayle*, 379 F.3d 612, 615

(9th Cir. 2004))(internal quotation omitted).

The Supreme Court reversed, holding that "relation back

depends on the existence of a common 'core of operative facts'

uniting the original and newly asserted claims." *Id*. at 659.

"So long as the original and amended petitions state claims that

are tied to a common core of operative facts, relation back will

be in order." *Id*. at 664.  The Court determined that the

petitioner's Fifth and Sixth Amendment claims were separate

occurrences under Rule 15(c), because each claim required proof

of a separate set of facts.  *Id*. at 661.  Although "[b]oth

involve the admission of out-of-court statements during the

prosecutor's case in chief," one the statement of petitioner

allegedly made under duress, and the other the videotaped

statement of a witness, "the two are otherwise unrelated." *Id*.

at 650.  *See also Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th

Cir. 2008) (acknowledging that "[i[n Mayle, the Supreme Court

rejected our construction as 'boundless'").

In this case, Petitioner argues the additional claims in the

Reply share a common core of operative facts, because all

allegations relate back to the original Petition's claim of

ineffective assistance of counsel.  Doc. 923 at 4.  Although no

cases have applied *Mayle* within the Ninth Circuit to analogous

circumstances, other Circuits have held that subsequent factual

claims of ineffective assistance of counsel do not automatically

relate back to the original claim of ineffective assistance of

counsel.  The amendment must still stem from the common core of

operative facts.

1    In *United States v. Ciampi*, 419 F.3d 20, 22 (1st Cir. 2005),

2  petitioner was convicted by a jury of a federal gambling charge

3  and later pled guilty to two other charges.  In his timely-filed,

4  *pro se* § 2255 petition, Ciampi claimed that his attorney failed

5  to investigate misrepresentations allegedly made by the United

6  States in the indictment, the investigation of which Ciampi

7  maintained would have unearthed exculpatory evidence.  *Id*. at 24.

8  Ciampi also timely alleged that the district court failed to

9  inform him, during his plea hearing, that he was waiving his

10  right to appeal and his right, if any, to assert a collateral

11  challenge.  *Id*. at 22.

12    Eighteen months later, Ciampi sought to amend his original

13  petition to assert two additional claims: (1) his counsel

14  rendered ineffective assistance by failing to appeal his

15  conviction on the gambling count; and (2) the government adduced

16  insufficient evidence to support his conviction on that count.

17  *Id*.

18    Ciampi first argued that the new ineffective assistance of

19  counsel claim related back to the original petition because both

20  claims arose from a failure to explain the rights he waived in

21  accepting his plea.  *Id*. at 23.  Second, Ciampi argued that if

22  the court permitted relation back of the ineffective assistance

23  of counsel claim, this ruling should extend to the claim of

24  insufficient evidence because an adequate attorney would have

25  objected to the gambling count based on insufficient evidence.

26  *Id*.  The court rejected these arguments, holding that neither

27  related back to the original petition.  *Id*. at 23-24.

28      [A] petitioner does not satisfy the Rule 15 "relation

**9**

back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.

*Id.* at 24 (citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000)).[3]

In *Davenport*, petitioner, who had been convicted of two drug offenses, timely filed his original § 2255 motion, asserting ineffective assistance on the grounds that his counsel:

---

[3]   Petitioner argues that his original petition, filed pro se, should be liberally construed.  The *Ciampi* court rejected a similar argument, noting:

[Ciampi's original petition] asserted another ineffective assistance claim against his attorney in his *pro se* petition, alleging that his counsel failed to investigate the misrepresentations allegedly made by the government in the indictment, which Ciampi contends would have unearthed evidence of governmental involvement in the illegal gambling enterprise. Not only does this suggest that Ciampi-acting pro se-adequately understood the required elements of an "ineffective assistance" claim, but it makes his omission of any similar claim-that his attorney failed to explain the appellate waiver to him-glaring indeed. As the Supreme Court recently made crystal clear, *see Mayle*, 125 S. Ct. at 2570, a petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.

419 F.3d at 24.  Here, Petitioner demonstrated a similar understanding of the required elements of an ineffective assistance claim, yet chose to focus on May's failure to call Mr. Noel, leaving out any general reference to "other witnesses" or specific reference to their names.  Under the circumstances, *Ciampi* counsels against excusing a *pro se* Petition from compliance with the standard "relation back" test.

1  (1) failed to object that the drugs did not meet the definition
2  of "crack cocaine" because it did not contain sodium bicarbonate;
3  (2) failed to object to the drug weight; and (3) failed to assert
4  that a government witness perjured himself.  217 F.3d at 1346.
5  He later sought to amend his petition to include three additional
6  claims of ineffective assistance on the grounds that counsel:
7  (1) allowed petitioner to be sentenced for three grams of cocaine
8  that were not part of the same course of conduct as an additional
9  forty-nine grams of cocaine; (2) relied on a summary lab report
10 instead of requesting the complete report analyzing the three
11 grams of cocaine; and (3) failed to inform petitioner that a plea
12 agreement might be possible.  *Id*.  The Eleventh Circuit held that
13 Davenport's new claims did "not arise out of the same set of
14 facts as his original claims," even though all claims referred to
15 a overarching allegation of ineffective assistance of counsel
16 claim, because the new claims "arose from separate conduct and
17 occurrences in both time and type."  *Id*.

18       In *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir.
19 1999), the original habeas petition alleged ineffective
20 assistance because Duffus' attorney (1) failed to contend on
21 appeal that the evidence was insufficient to convict Duffus on
22 money laundering; and (2) failed to object at sentencing to the
23 district court's use of the sentencing guidelines in effect at
24 the time of the sentencing, rather than those in effect when
25 Duffus allegedly withdrew from the drug conspiracy for which he
26 was convicted.  *Id*. at 335.  Duffus later sought to amend his
27 motion, proposing to include a claim that his trial attorney had
28 been ineffective for failing to move to suppress the drug

evidence on the ground that it had been unlawfully seized.  The
Third Circuit held that "while Duffus asserted in his initial
motion that his attorney had been ineffective, the particular
claim with respect to failing to move to suppress evidence was
completely new."  *Id*. at 337.  *See also United States v.
Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) ("Failing to file an
appeal is a separate occurrence in both time and type from a
failure to pursue a downward departure or failure to object to
the type of drugs at issue.").

Here, the original Petition states: "[a]t the heart of this
claim lies an omission to secure a witness - Mr. Noel...."  Pet.
at 19.  One of the bases for the original ineffective assistance
of counsel claim was the failure of counsel to "secure the
attendance of a key defense witness, especially after telling the
jury that they would hear testimony from this witness vindicating
his client."  *Id*. at 2.  The "key witness" to which Petitioner
explicitly refers is Mr. Noel.  The original Petition does not
cite any other instances of counsel's failure to call other
witnesses or experts.

The Reply, however, discusses, for the first, time several
other alleged key fact witnesses that May failed to call during
Petitioner's trial, namely (1) Todd Houston, (2) Robert Weekley,
(3) Amber Miller, and (4) Petitioner's sons' school rincipal.
Doc. 7-1, 1:02-cv-06498, at 22-28.  The Reply also discusses
May's failure to call three expert witnesses:  (a) a satellite
television installation expert, (b) a medical examiner/forensic
pathologist, and (c) a criminalist.  *Id*. at 29-36.

####        a.   Todd Houston.

Todd Houston testified for the defense at Crawford's state murder trial in Rockport, Texas ("Rockport Trial").  Petitioner's Ex. ("PEX") 29.  Houston was in the business of detailing cars, and Crawford was one of Houston's customers.  *Id*. at 6-7.  Houston testified at the Rockport Trial that (1) he had an appointment with Crawford on May 6, 1999 (the day of the murder) to detail Crawford's red Mercedes; (2) he met Crawford for about 20 minutes at a grocery store between 4:00 and 5:00 pm that day; and (3) Crawford was then driving a blue truck, rather than his red Mercedes.  *Id*. at 7-11.

Houston's testimony purportedly corroborated Crawford's alibi that he was at a store at the time of the murder.  Houston also purportedly refuted the testimony of the government's cooperating witness, Mike Beckcom, who testified that Crawford was driving a red Mercedes that day.  Mr. Houston was subpoenaed and traveled to California.  PEX 25.  Mr. Litman prepared Mr. Houston to testify, believing he should have been called as a defense witness.  Mr. Litman does not know why Houston was never called.  PEX 4 at 120-123.

####        b.   Robert Weekley.

Robert Weekley, who lived directly across from the warehouse where the murder took place, testified at Crawford's first murder trial.  PEX 30 at 1673.  He recalled seeing a red Ford Explorer and a white Oldsmobile at the warehouse the week of Mr. Brueggen's disappearance.  *Id*. at 1674.  He also recalled seeing a satellite dish delivered to the warehouse.  *Id*. at 1676.  At the second trial, Mr. Weekley's prior testimony was admitted and

1  read to the jury.  *Id*. at 1671.  May never called Weekley in the

2  federal trial.  May asserts that Mr. Weekley's testimony was

3  unnecessary because the government never offered evidence that

4  Crawford's red Mercedes was at the crime scene.  PEX 2 at 106.

5  This is not correct.  Mike Beckom repeatedly testified that

6  Crawford had his red Mercedes at the crime scene.  12 R 2641,

7  2646, 2702, 3308.

8                    c.  <u>Amber Miller.</u>

9       Amber Miller was Nick Brueggen's girlfriend at the time of

10  the murder.  In his opening statement, Mr. May repeatedly told

11  the jury that he would produce important testimony from and about

12  Ms. Miller, suggesting (a) that Brueggen was mixed up in numerous

13  schemes and traveling on false identification; and (b) that

14  Miller, not Crawford, had a motive to see Brueggen dead.  PEX 23

15  at 249, 261, 274.  Ms. Miller testified in one of the state

16  trials that she and Brueggen traveled to Italy together and that

17  Brueggen used a passport to pass through customs.  *Id*. at 1290.

18  Nevertheless, Brueggen's passport bore no stamp for Italy,

19  suggesting Brueggen had traveled to Italy under an assumed name.

20  16 R 3119.  Ms. Miller testified that she was the beneficiary of

21  a $100,000 life insurance policy taken out in Brueggen's name.

22  PEX 31 at 1308.  She also testified that when Brueggen left for

23  Corpus Christi on May 6, 1999, he was clean-shaven.  *Id*. at 1292-

24  93, 1297.  The medical examiner who testified at the Fresno trial

25  opined that the body found at the Jacoby Lane warehouse had a

26  visible beard and moustache that could not have grown after

27  death.  12 R 2595-96.

28

                              **14**

**d.   Relation Back Analysis as to Todd Houston, Robert Weekley, and Amber Miller.**

The inquiry is whether May's failure to call Todd Houston, Robert Weekley, and Amber Miller are part of the same "common core of operative facts" as the original claim regarding May's failure to call Mr. Noel.  The claims will not relate back if they are "different in time and type."

On the one hand, the newly-identified absent witnesses raise distinct and different factual issues.  Todd Houston and Robert Weekley would have testified to the validity of Mark Crawford's alibi, namely, that Petitioner was elsewhere at the time of the murder.  Robert Weekley would also have corroborated the explanation petitioner gave for the hole in the backyard of the Jacoby Road residence.  Ms. Miller would have provided testimony concerning the motives she and/or others might have had to eliminate Brueggen.  In contrast, Mr. Noel would have testified about the existence of a scheme and/or conspiracy to frame Mr. Crawford for Brueggen's murder.  This is distinct and different from the alibi and motive evidence that would have been offered by the newly-identified absent witnesses.

On the other hand, parsing the relation back doctrine too narrowly would eviscerate its purpose.  Although the most closely-related claim in the original petition focused narrowly on May's failure to call Mr. Noel, the Petition also contains a general allegation that "counsel failed to adeqately prepare for trial."  Doc. 812 at 2.  It is possible to view May's failure to call Mr. Noel, Mr. Houston, Mr. Weekley, and Ms. Miller as arising out of May's general failure to prepare for trial.

15

Applying this logic, however, would allow an unlimited number of new allegations to relate back to an original petition, so long as that petition included a broadly-worded allegation of "failure to adequately prepare for trial."  Such an interpretation would be almost as "boundless" as the original approach to relation-back taken by the Ninth Circuit in *Felix v. Mayle*, 379 F.3d at 615, which was unequivocally rejected by the Supreme Court. *Mayle*, 545 U.S. at 650.

The purpose of the relation back doctrine has been identified.  In rejecting the Ninth Circuit's reasoning that the "relevant 'transaction' for purposes of Rule 15(c)(2) was [petitioner's] 'trial and conviction in state court" *id*. at 653 (citing *Felix v. Mayle*, 379 F.3d at 615), the Supreme Court recognized that, while Rule 15 is designed to "qualify" the statute of limitations, it does not "repeal" it, *id*. 662.

> Habeas Corpus Rule 2(c), we earlier noted...instructs petitioners to "specify all [available] grounds for relief" and to "state the facts supporting each ground." Under that Rule, Felix's Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an "occurrence."  [T]he approach that prevailed in the Ninth Circuit, is boundless by comparison. A miscellany of claims for relief could be raised later rather than sooner and relate back, for "conduct, transaction, or occurrence" would be defined to encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction. An approach of that breadth..."views 'occurrence' at too high a level of generality." [citation]

> Congress enacted AEDPA to advance the finality of criminal convictions. *See Rhines v. Weber*, 544 U.S. 269, 276 (2005). To that end, it adopted a tight time line, a one-year limitation period ordinarily running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. §

16

2244(d)(1)(A). If claims asserted after the one-year
period could be revived simply because they relate to
the same trial, conviction, or sentence as a timely
filed claim, AEDPA's limitation period would have slim
significance... The very purpose of Rule 15(c)(2), as
the dissent notes, is to "qualify a statute of
limitations." Post, at 2576.  But "qualify" does not
mean repeal.

*Mayle*, 545 U.S. at 660-61.

Here, the government was clearly placed on notice of the
allegation regarding May's failure to call Mr. Noel, affording
the government an opportunity to present evidence concerning
May's strategic concerns about Mr. Noel.  The government had no
prior notice regarding Mr. Houston, Mr. Weekley, and Ms. Miller.
Although the original allegation that May failed to call Mr. Noel
is generally similar to the subsequent allegation regarding May's
failure to call Houston, Weekley, and Miller, the underlying
facts that would be raised by the potential testimony of these
three fact witnesses are distinct from the facts raised by Mr.
Noel's testimony.  Moreover, the strategic reasons, if any exist,
why Mr. May might have chosen not to call Mr. Noel are likely to
be entirely different from any strategic reasons why he did not
call Mr. Houston, Mr. Weekley, and Ms. Miller.  The newly-raised
claims concerning these three newly-raised fact witnesses do not
relate back to the original complaint.

Petitioner's motion to amend his § 2255 motion to include
these new claims is DENIED.  The United States' motion to strike
those portions of the Reply that concern these witnesses (pages
21-28) and related attachments (PEX 29, 30 & 31) is GRANTED.

17

### e. Relation Back Analysis as to the Expert Witnesses.

The Reply alleges that May's failure to call the satellite installation expert, the medical examiner/forensic pathologist, and the criminalist constituted ineffective assistance of counsel.  The original petition failed to mention any alleged failure to call expert witnesses.

In May 1998, over a year before the trial, May applied to the district court for the appointment of expert witnesses to assist in Crawford's defense.  PEX 17.  May represented that: (1) an expert in insurance was necessary to help the jury understand the intricacies of the insurance business; (2) a forensic criminologist was necessary to evaluate some of the crime-scene evidence; (3) an expert in satellite television installation was needed to explain that the hole Mr. Crawford requested dug in the backyard of the Jacoby Lane residence was appropriate for a satellite dish; and (4) a medical examiner was needed to explain an alternative theory of death.  *Id*.

The Court entered an order approving the appointment of the requested experts.  PEX 19.  Petitioner contends that May did nothing to secure the testimony of these or any other experts, PEX 20, nor did he even contact any of these persons, PEX 14.  Petitioner maintains there could be no strategic reason for Mr. May's failure to consult with these experts.  Doc. 7-1 at 30.

Petitioner relies on *Woodward v. Williams*, 263 F.3d 1135 (10th Cir. 2001), to support his assertion that these new claims relate back to the original Petition, because these other allegations clarify or amplify his original ineffective

1  assistance of counsel claim.

2      In *Woodward*, the Tenth Circuit stated:

3          [A]n untimely amendment to a § 2255 motion which, by
           way of additional facts, clarifies or amplifies a claim
4          or theory in the original motion may ... relate back to
           the date of the original motion if and only if the
5          original motion was timely filed and the proposed
           amendment does not seek to add a new claim or to insert
6          a new theory into the case.

7  263 F.3d at 1142 (internal citation and quotation omitted).

8  Woodward's original petition alleged that his Due Process rights

9  had been violated because subsequently-recanted statements were

10 introduced at trial.  *Id.*  He then sought to amend his petition

11 to allege that a Due Process violation occurred when the trial

12 court failed to allow the petitioner to introduce evidence that

13 the statement referred to in the original petition had been

14 recanted.  *Id.* at 1142.  The Court determined that the amended

15 petition merely clarified or amplified the original petition,

16 because both were evidentiary arguments relating to the same set

17 of facts: the statement itself.  *Id.*

18     This case differs markedly from *Woodward*, because the

19 experts here would have created and/or bolstered entirely new

20 defense theories, independent from Mr. Noel's assertion of the

21 existence of a conspiracy to frame Mr. Crawford.  The satellite

22 installation expert purportedly would have supported the theory

23 that the hole in the yard of the Jacoby Lane residence was not

24 intended to serve as a grave for Mr. Brueggen.  The medical

25 examiner/forensic pathologist purportedly would have implicated

26 the government's cooperating witness, Mike Beckcom in the

27

28

1  murder.[4]   Finally, Petitioner contends that a criminalist would
2  have helped attack the physical evidence, including the
3  government's assertion that one fingerprint lifted from a piece
4  of duct tape on the bottom of the box in which Mr. Brueggen was
5  allegedly killed matched Crawford's fingerprints.

6      The Supreme Court made clear in *Mayle* that relation back is
7  not appropriate "when the new claims depend upon events separate
8  in both time and type from the originally raised episodes."  545
9  U.S. at 657.  Here, the additional witnesses and experts depend
10 upon events that are separate in time and type from those events
11 surrounding counsel's failure to secure Mr. Noel as a witness.
12 Petitioner's motion to amend his § 2255 motion to include these
13 new claims is DENIED.  The United States' motion to strike those
14 portions of the Reply that concern these witnesses (pages 27-37)
15 and related attachments (Exhs. 6 & 6D,[5] 8, 11, 11A, 11B, 12, 13

16

17     [4]   Beckcom admitted he was arrested with a syringe
18 containing insulin, even though he was not a diabetic.  *See* PEX
   33. May sought the assistance of a medical examiner/forensic
19 pathologist to corroborate that Brueggen's death was consistent
   with an insulin overdose.
20

21     [5]   Exhibit 6 is the sworn affidavit of Deborah Cordis-
   Weaver, a private investigator appointed to assist Petitioner's
22 defense team during the Fresno trial.  Exhibits 6A through 6D are
   various related records provided by Ms. Cordis-Weaver, including
23 billing documents, witness lists, and handwritten notes.  Her
   declaration and the related exhibits contain general descriptions
24 of her activities with respect to contacting witnesses and
   securing their attendance at trial, as well as specific
25 information about particular witnesses, including Mr. Noel, and
   others.  References to Mr. Noel, as well as general explanations
26 of the activities Ms. Cordis-Weaver undertook at Mr. May's
   direction are relevant to arguments raised in the original
27 petition.  With respect to these references, the United States'
28

20

1   (with the exception of those portions of this document which

2   concern Mr. Noel), 14, 32, 33 & 34) is GRANTED.[6]

3                    **(1)   The School Principal.**

4        The original petition alleges that May's conduct was

5   constitutionally ineffective because he failed to offer into

6   evidence Petitioners sons' school attendance records, evidence

7   that arguably supported Petitioner's alibi defense.  The Reply

8   argues specifically that May should have called the Principal of

9   Petitioner's sons' school, who purportedly would have testified

10  about the school attendance records, thereby establishing that

11  Petitioner's sons were with him on the day of the murder.

12       Failure to call the Principal as a witness in the federal

13  trial relates back to the allegation in the original petition

14  that counsel failed to offer the attendance records into

15  evidence, although why the Principal is necessary, as opposed to

16  a custodian of records, is unclear.  Both claims stem from a

17  common core of operative facts; namely, May's failure to admit

18  the school's attendance records into evidence and any strategic

19  reasons May might have had for not doing so.  Petitioner's motion

20  _____

21  motion to strike is DENIED.  With respect to references to any
    other witnesses, the motion is GRANTED.

22

23       [6]   The United States also moves to strike the motion for
    appointment of experts filed by Mr. May in this case, the

24  district court's order appointing experts for Mr. Crawford, the
    expert list filed by Mr. May in this case, and the executed trial

25  subpoena for Todd Houston, Exhibits 17, 19, 20, and 25,
    respectively.  These documents are part of the official record in

26  this case.  It would not be appropriate to strike them.  However,
    these exhibits will not be considered in the context of

27  Petitioner's § 2255 motion because they concern time-barred

28  arguments.

to amend his § 2255 motion to include a claim regarding May's

failure to call the school Principal is GRANTED.  The United

States' motion to strike those portions of the Reply that concern

this witness is DENIED.

(2)  <u>May's Disciplinary Records.</u>

Petitioner's Reply brief discusses Mr. May's disciplinary

record before the State Bar of Texas.  Doc. 7-1 at 37-38.  These

disciplinary matters were not discussed in the original petition.

Specifically, the Reply states:

> In 1993, Mr. May received a private reprimand from the
> State Bar of Texas for failing to advise a client that
> a habeas corpus had been denied.  Exh. 38 at 47:7-47:16
> (B. May Depo in *Kleberg v. May*).  In 2003, Mr. May was
> publicly reprimanded by the State  Bar for two separate
> violations.  Exh. 40 (State Bar Orders).  In one
> representation in 1999 and a second representation from
> 2001-02, Mr. May was disciplined for failure to
> communicate adequately with his clients and failure to
> return one of the client's file upon request.
>
> In 2006, the State Bar placed Mr. May on probated
> suspension for conduct that occurred in 2001.  Mr. May
> took a $7500 fee from a client for representation in a
> criminal case, filed a notice of appearance, and then
> did nothing despite repeated calls from the client's
> family.  *Id*.  After his services were terminated, Mr.
> May did not return the unearned fee despite repeated
> requests.  After a grievance hearing, the State Bar
> placed Mr. May on a two-year, probated suspension for
> failing to adequately represent and communicate with a
> client.  *Id*.

*Id*. at 38.

The United States argues that these references to May's

Disciplinary Records should also be stricken as untimely

amendments to the petition.

Petitioner points to *Sanders v. Ratelle*, 21 F.3d 1446, 1460

(9th Cir. 1994), for the proposition that disciplinary records

are admissible to support a claim of ineffective assistance of

22

counsel whether or not the disciplinary records are mentioned in the original petition.  The habeas petitioner in *Sanders* alleged that his lawyer failed to investigate key aspects of his defense, and, specifically, that he failed to interview a third party who confessed to the crime.  *Id*. at 1456.  The government argued that counsel failed to pursue this line of defense for strategic reasons, namely, that the existence of a confession was inconsistent with petitioner's other defenses.  *Id*. at 1456, 1459.  The Ninth Circuit reasoned that the government's argument "ma[de] little sense" in light of the fact that defense counsel failed to conduct "even the minimal investigation that would have enabled him to come to an informed decision about what defense to offer and whether to call [the confessor] as a witness."  *Id*. at 1456.

        The Ninth Circuit considered defense counsel's disciplinary record as additional support for its conclusion that petitioner received ineffective assistance of counsel.  Specifically, the attorney had been "disbarred from the practice of law... [for] a course of conduct demonstrating complete indifference to his legal and ethical duties to the great detriment of his clients." *Id*. at 1460.  The relevant course of conduct, spanning almost a decade, including the year in which petitioner was convicted, demonstrated that, after being retained by clients, "the attorney did nothing to investigate or further their cases."  *Id*.  This evidence "directly refut[ed] the [government's] argument that [defense counsel's] failure to use [the] confessions was based on a strategic decision about how best to represent his client...." *Id*.

There is no discussion in *Sanders* about whether counsel's disciplinary records were timely raised in the original petition. Accordingly, *Sanders* does not directly support Petitioner's argument that May's disciplinary records should be admitted as a matter of course, even though they were not mentioned in the original Petition.  Even assuming, *arguendo*, that *Sanders* does support consideration of disciplinary records regardless of when they are presented, Petitioner's reliance on *Sanders* is misplaced.  *Sanders* merely instructs courts to consider disciplinary records that reflect a long-standing course of conduct closely related to the unlawful conduct alleged in the petition.

Here, Mr. May's disciplinary records reflect no pervasive pattern of conduct, let alone one related to his alleged failure to prepare for trials and/or the allegation that he operated under a conflict of interest at the time of the trial in dispute. In contrast, his disciplinary records reflect occasional communication failures and instances of financial misconduct. These incidents do not bear upon the conduct alleged in this case.  The United States' motion to strike those portions of the Reply that concern May's disciplinary record (page 38), associated attachments (PEX 38, 40 & 43), and related supplemental filings (Docs. 924 and 929), is GRANTED.

.

## B.   Defendant's Motion to Produce CJA Records.

Petitioner also moves for an order requiring the CJA Panel Administrator to produce all billing records and CJA 20 forms submitted by Bill May for work performed on behalf of Mr.

Crawford in this case.

### 1.   CJA Billing Records

Petitioner alleges that Mr. May was unprepared for trial, and that this failure manifested itself in various ways, including May's failure to secure the testimony of several key fact and expert witnesses.  Petitioner asserts that discovery of the billing records Mr. May provided to the CJA Panel will "help establish what effort, if any, Mr. May made to contact these witnesses."  Doc. 8-1, 1:02-CV-6498, at ¶2.  However, with the exception of evidence pertaining to Mr. Noel and Petitioner's sons' school Principal, evidence regarding May's alleged failure to call other witnesses has been stricken as untimely.  The CJA Billing records would shed no additional light on the Petitioner's allegations regarding Mr. Noel and/or the Principal because there is no dispute as to Mr. May's efforts, or lack thereof, to call them.

Petitioner's motion to produce the CJA billing records is DENIED.

### 2.   CJA 20 Forms

Petitioner asserts that discovery in the context of the § 2255 motion has revealed that Mr. May never informed the Panel Administrator of certain private compensation he was receiving during the trial.  Mr. May would have been required to certify, on CJA 20 forms, whether or not he received any such outside compensation.  Mr. May's certifications on these forms go to his credibility generally and are therefore relevant.  Petitioner's

25

motion to produce CJA 20 forms from the time period leading up to and including the June 1999 trial is GRANTED.  The CJA Panel administrator is directed to deliver these records to the Clerk of Court on or before March 6, 2009.  The Clerk will then distribute copies to counsel.

### III.  CONCLUSION

For the reasons set forth above:

(1) Petitioner's Reply is construed as a motion to amend his § 2255 motion;

(a)  Construed as such, Petitioner's motion to amend is GRANTED as to evidence pertaining to May's alleged failure to call Petitioner's sons' Principal and DENIED as to all other evidence regarding May's failure to call Mr. Houston, Mr. Weekley, Ms. Miller and the expert witnesses, as well as May's disciplinary records.

(2)  The United States' motion to strike is GRANTED as to all argument and evidence pertaining to May's alleged failure to call Mr. Houston, Mr. Weekley, Ms. Miller and the expert witnesses, as well as May's disciplinary records.

(3)  Petitioner's motion for an order requiring the CJA Panel Administrator to produce CJA billing records from his trial is DENIED.

(4)  Petitioner's motion for an order requiring the CJA Panel Administrator to produce CJA 20 Forms from his trial is GRANTED.  The Panel Administrator shall forward responsive documents to the Clerk of Court on or before March 6, 2009.  The Clerk of Court will provide copies to counsel.

    (5)   Petitioner shall have 10 days from counsels' receipt of the CJA 20 records to file a supplemental brief of no more than 10 pages concerning those records.   The United States shall have an additional 10 days to file a response of no more than 10 pages.


SO ORDERED

Dated:   February 22, 2009


                              ___/s/ Oliver W. Wanger_____
                                  Oliver W. Wanger
                              United States District Judge

27